THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE CARDONA, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 21 C 5013 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| POLARIS CHARTER ACADEMY, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christine Cardona ("Cardona") alleges that she was fired as teacher at Defendant Polaris Charter Academy ("Polaris") because of her disability and taking disability-related absences. She brings a discrimination and retaliation suit against Polaris under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601. Polaris now moves for summary judgment on all of Cardona's claims. (Dkt. 19). For the following reasons, Polaris's motion for summary judgment [19] is granted in part and denied in part.

### BACKGROUND[1]

Polaris Charter Academy is a K-8 elementary school in West Humboldt Park in Chicago. (Dkt. 23 ¶ 1). Christine Cardona was a teacher at Polaris for four years where, during the 2019–2020 academic school year, she served as the only 7th and 8th grade science teacher. (*Id.* at ¶¶ 5–8). While teaching, she was diagnosed with lupus which caused fatigue, vertigo, and joint swelling.

---

[1] In Polaris's reply, Polaris argues that certain facts in its Rule 56.1 Statement of Material Facts should be admitted because Cardona's responses to Polaris's facts were argumentative and evasive. (*See* Dkt. 26 at 3). The Court has reviewed Polaris's arguments, and the facts that the Court has found take those considerations into account.

1

(Dkt. 25 ¶¶ 19–20). Because of her lupus, Cardona had difficulty sitting or standing for long periods of time and would suffer random flare ups. (*Id.* at ¶¶ 20–21).

On May 3, 2019, Cardona sent a text message to Michelle Navarre, the Head of School at Polaris, stating that she "may need to take FMLA [leave]." (Dkt. 23 ¶ 15; Dkt. 20-1 ¶ 8). Then, on August 9, 2019, Cardona informed Francesca Peck, the Director of Culture and Character at Polaris, about her lupus and stated that she would need procedures and appointments to address it. (Dkt. 23 ¶ 11; Dkt. 1 ¶ 21). Peck reacted positively and compassionately to the news. (Dkt. 23 ¶ 12). A few days later, Navarre approved Cardona to take time off for procedures and doctor appointments that Cardona mentioned to Peck. (Dkt. 23 ¶ 13; Dkt. 1 ¶ 22). On October 6, 2019, Cardona sent a second text message to Navarre asking if it was possible to cut back on her teaching hours before trying to take FMLA leave. (Dkt. 23 ¶ 15; Dkt. 20-5). In a follow-up meeting with Navarre, Cardona again suggested that she may need to change from a five-day work week to a four-day one. (Dkt. 23 ¶ 17). Navarre was sympathetic to Cardona's medical conditions and told Cardona to "take time off as [she] needed." (*Id.* at ¶ 18). Navarre had written down in her meeting notes to continue communicating with Cardona and allow her to take time off as needed and commented that FMLA leave was possible if the medical conditions get worse. (*Id.* at ¶ 19; Dkt, 20-6). Navarre also spoke with Polaris's benefits manager to discuss Cardona taking FMLA leave. (Dkt. 23 ¶ 20). But Cardona never filed for any FMLA paperwork. (*Id.* at ¶ 21; Dkt. 24-1, 43:8–11; Dkt. 24-2, 46:4–6). During the 2019-2020 school year, Polaris approved of approximately 10 excused absences for Cardona. (Dkt. 23 ¶ 23; Dkt. 25 ¶ 22).

During this time, no one at Polaris explicitly told Cardona that she was taking too many excused absences. (Dkt. 23 ¶ 25; Dkt. 24-2, 39:15–17). Still, Cardona stated that Polaris created a work culture that pressured employees and herself to work harder. (Dkt. 25 ¶ 25). Specifically,

2

Cardona stated the messaging from Polaris was if the employees were struggling, they had to "row harder" and to push themselves "to be better" and "to be more." (Dkt. 24-2, 39:11–17). Cardona also received an email that said many teachers were complaining about her absences. (Dkt. 24-2, 39:18–20). On one occasion, Cardona stated that she received pushback from Polaris when she had to leave work early without providing advance notice to attend an emergency medical consultation and pick up a prescription for her lupus. (Dkt. 25 ¶ 26; Dkt. 24-2, 40:16–41:20). Further, on August 20, 2019, Navarre sent an email to all the employees stating that she would begin scrutinizing absences and "holding everyone accountable to being present as much as they are able." (Dkt. 25 ¶ 27; Dkt. 24-1, 49:2–11).

In March 2020, the COVID-19 pandemic shut down most of America, and Polaris became concerned about its funding for the next academic year. (Dkt. 23 ¶ 33). Polaris receives its funding according to how many students enroll in its school—the more students enroll, the more funding the school receives. (*See id.* at ¶¶ 33–36). Polaris receives approximately $12,000-$15,000 per enrolled student, and Polaris projected that enrollment would drop from over 400 students to around 360. (*Id.* at ¶ 34; Dkt. 25 ¶¶ 9–10). In light of the drop in enrollment and funding, Polaris began to terminate employees. (Dkt. 23 ¶ 41). For example, Polaris terminated a 1st grade teaching position, the 7th and 8th social studies position, and Cardona's 7th and 8th grade science position. (Dkt. 25 ¶ 14). A 1st grade teacher and an office employee were also let go by the school. (Dkt. 23 ¶ 41). Both individuals were not disabled. (*Id.* at ¶ 45). Consequently, Polaris transitioned school administrators to teaching positions to compensate for the reduced teaching staff. (*Id.* at ¶ 42).

It was during this transition period that Navarre informed Cardona that her employment at Polaris was terminated. In her deposition, Cardona states that Navarre cited to Cardona's absences as a reason for firing her. (Dkt. 25 ¶ 36). Specifically, Navarre mentioned that Cardona did not

3

"fully participate," had "absences," and "missed school meetings." (Dkt. 24-2, 64:18–20). In the same meeting, Navarre also mentioned budget and enrollment concerns as other reasons for terminating Cardona. (Dkt. 23 ¶ 39; Dkt. 24-1, 30:2–7; Dkt. 24-2, 65:7–9). Navarre stated that budgetary constraints were the only reason for terminating Cardona. (Dkt. 23 ¶ 40; Dkt. 24-1, 29:12–16).

## LEGAL STANDARD

Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). The Court's role is not to evaluate the weight of the evidence, to judge the credibility of the witness, or to determine the ultimate truth of the case, but simply to determine whether there exists a genuine issue of material fact. *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 751 (7th Cir. 2007). A genuine issue of material fact exists when there is "sufficient evidence" for a jury to return a verdict in favor of the party opposing summary judgment. *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022).

## DISCUSSION

### I.  Count I – ADA Discrimination

Cardona alleges that Polaris discriminated against her by terminating her employment because of her disability. To establish a discrimination claim under the ADA, Cardona must show that (1) she is disabled, (2) she is qualified to perform the job's essential functions with or without reasonable accommodation; and (3) the adverse employment action was caused by her disability.

4

*Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017). Polaris does not dispute the first two elements, so the Court will only address the third.

No doubt, Cardona suffered an adverse job action when Polaris terminated her employment. *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007) (finding that an adverse job action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits") (citation omitted). Thus, the question is whether Cardona's disability caused the termination.

To establish the third element and survive summary judgment, a plaintiff must present a genuine issue of material fact regarding whether their disability was a "but for" reason for their termination. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010). In *Serwatka*, the Seventh Circuit held that "a plaintiff complaining of discriminatory discharge under the ADA must show that his or her employer would not have fired him but for his actual or perceived disability; proof of mixed motives will not suffice."[2] *Id.* The Court acknowledges that *Serwatka*'s holding applies to language in the ADA prior to the ADA Amendments Act where the language about prohibiting employee discrimination changed from discriminating "because of" a disability to "on the basis" of a disability. *See Serwatka*, 591 F.3d at 960; 42 U.S.C. § 12117. The Seventh Circuit has commented on whether such an amendment changes the causation standard. *See Kurtzhals v. Cty. Of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020); *Monroe*, 871 F.3d at 504, *Roberts v. City of Chi.*, 817 F.3d 561, 565 n. 1 (7th Cir. 2016); *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 n. 2 (7th Cir. 2015). The Court does not currently need to resolve this issue. Although Cardona raises the open question surrounding the but-for standard, she does not provide

---

[2]

meaningful guidance or briefing on an alternative causation standard. In fact, after raising this open question, Cardona states that "the record evidence clearly establishes that Defendant terminated Plaintiff specifically *because of* Plaintiff's disability." (Dkt. 22 at 6) (emphasis added). Cardona herself argues that her disability was the but-for cause of her termination. Thus, this Court will apply the same standard.

To show a but-for causation, the Seventh Circuit has moved away from using multifactored tests and distinguishing between direct versus indirect methods[3] to determine employment discrimination. *Monroe*, 871 F.3d at 504. Instead, a court should evaluate the evidence as a whole, "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge." *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). In other words, the Court asks whether a reasonable juror could conclude that the plaintiff would not have suffered the same adverse employment action if she was not disabled and everything else remained the same. *Kurtzhals*, 969 F.3d at 729.

Here, there is a material, disputed fact as to why Cardona was terminated. In Cardona's deposition, she stated that Navarre specifically referenced Cardona's absences as a reason for the termination. Those are the same absences that Navarre approved, and she was aware that Cardona needed those absences to treat her disability. Navarre also mentioned how Cardona had not been fully participating with school activities and had missed several school meetings. Both reasons are still logically and practically connected to Cardona's disability-related absences. Cardona also asserts in her deposition that Polaris cultivated a work culture that pressured employees to forego absences. She cites to the school-wide email stating that the administration will hold the employees

---

[3] The Seventh Circuit has moved away from tests like the burden-shifting method established in *McDonnell-Douglas Corp. v. Green* to indirectly prove disability discrimination. *Monroe*, 871 F.3d at 504.

accountable to be present at school and the instance where she received pushback for leaving early to attend an emergency consultation.

But Polaris disputes Cardona's stance and states that the termination was entirely for budgetary and enrollment concerns. Polaris presents evidence that there would be fewer students enrolled at Polaris which would lead to less overall funding. In the termination meeting with Cardona, Navarre also mentioned budget and enrollment concerns as reasons for firing Cardona. Moreover, two other Polaris employees were terminated and neither of these individuals had a disability. Furthermore, Polaris argues that the email was not specifically targeted at Cardona and the pushback Cardona received was from the fact that she did not provide advance notice to the school. The Court acknowledges that Polaris presents legitimate reasons for terminating Cardona, but at the very least, these facts create a genuine issue of material fact as to what reason was the but-for cause. *See e.g., Durns v. Fam. Guidance Centers, Inc.*, No. 19 C 4154, 2021 WL 4477919, at *8–10, 12 (N.D. Ill. Sept. 29, 2021) (denying summary judgment because there was a dispute as to whether plaintiff was fired because of his disability or for poor performance).

At this stage, the Court does not evaluate the weight of the evidence or make credibility determinations. *See Tibbs v. Admin. Off. of the Ill. Cts.*, 860 F.3d 502, 505 (7th Cir. 2017) (stating that at the summary judgment stage, the critical question is whether an inference of unlawful intent is reasonable). Cardona has presented sufficient evidence to create a genuine issue of material fact as to whether she was terminated because of her disability-related absences or because of the school's financial restraints. *See Payne v. Pauley*, 337 F.3d 767, 771–73 (7th Cir. 2003) (holding that evidence presented in a self-serving deposition is enough to thwart a summary judgment motion). Therefore, the Court denies summary judgment on Count I.

**II.     Count II – ADA Failure to Accommodate**

Cardona also alleges Polaris violated the ADA by failing to accommodate for her disability. To establish a *prima facie* case for failure to accommodate, "a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011) (citation omitted). Polaris again does not dispute the first two elements, but argues that it did provide Cardona with reasonable accommodation for her disability.

Reasonable accommodations may include job restructuring, part-time or modified work schedule, reassignment to a vacant position, and other similar accommodations for an individual. *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 288 (7th Cir. 2015). The ADA requires both employers and employees to engage in a flexible, interactive process to identify reasonable accommodations for a disabled employee. *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 821 (7th Cir. 2017). To be clear, the interactive process is not the end in itself, but rather the means to determine reasonable accommodations. *Rehling v. City of Chi.,* 207 F.3d 1009, 1015 (7th Cir. 2000), *amended* (Apr. 4, 2000). The ADA intends to provide reasonable accommodations for disabled individuals, not to punish employers, who, even failing to engage in the interactive process, have provided reasonable accommodations. *Id*. at 1016.

Here, Cardona presents no evidence to support her argument that Polaris did not reasonably accommodate her disability. Her argument is that Polaris never provided paperwork or instruction to Plaintiff after her initial request for FMLA leave and accommodations. Thus, Cardona argues that Polaris failed to interactively engage with Cardona to find reasonable accommodations. She misses the forest for the trees. The interactive process is simply a means to a reasonable accommodation. *Id.* at 1015. The issue is not whether Polaris has failed to engaged in a dialogue with Cardona on all possible accommodations, but rather, whether Polaris provided reasonable

8

accommodations to Cardona. *See Jay v. Internet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) ("It is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests."); *Schmidt v. Methodist Hosp. of Ind.*, 89 F.3d 342, 344 (7th Cir. 1996) (stating that "[r]easonable accommodation does not require an employer to provide literally everything the disabled employee requests"). And the undisputed record shows that the answer is yes.

When Cardona first alerted Polaris about her lupus condition, she did not receive pushback from the Polaris administration. The Director of Culture and Character Francesca Peck was compassionate and understanding towards Cardona's disability. Navarre approved Cardona to take an absence "for all procedures and doctor's appointments" related to her disability. (Dkt. 23 ¶ 13). When Cardona suggested that she may need to reduce the number of days she works or have a more flexible schedule on when to arrive and leave the school, Navarre was supportive and told Cardona to "take time off as [she] needed." (*Id.* at ¶¶ 17–18). So, Cardona asked for a flexible, modified work schedule to both continue working as a teacher and be allowed to take disability-related absences and Navarre agreed. That is reasonable accommodation. *See e.g.*, *Altheimer-Umphlett v. DeJoy*, No. 20 CV 7406, 2023 WL 4365993, at *13 (N.D. Ill. July 6, 2023) (stating that requesting a schedule to work every other day to accommodate a swollen foot is an example of reasonable accommodation). Cardona attempts to create a dispute by stating that Polaris cultivated a work culture that pressured employees to forego absences but that is inconsequential because Polaris accommodated Cardona's disability with time off and a reduced schedule. In short, this modified work schedule is exactly the kind of reasonable accommodation envisioned by the ADA. As to Count II, summary judgment is granted.

**III. Count IV – FMLA Interference**

Cardona next alleges that Polaris interfered with her right to exercise FMLA leave. To establish a *prima facie* FMLA interference case, an employee must show that: (1) she is eligible for the FMLA's protections; (2) her employer is covered by the FMLA; (3) she is entitled to take leave under the FMLA; (4) she provides sufficient notice of her intent to take leave; and (5) her employer denies her FMLA benefits to which she is entitled. *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). Polaris concedes the first three elements are satisfied. The contention then, is whether Cardona provided sufficient notice and whether Polaris denied her the FMLA benefits.

Here, Cardona did provide sufficient notice to Polaris for FMLA leave. The standard is simple: to meet the notice obligation, an employee does not need to say that she is taking FMLA leave; she does not even need to say that she may take FMLA leave. *See Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004) ("[T]he employee's duty is merely to place the employer on notice of *a probable basis* for FMLA leave." (emphasis added)). The obligation is satisfied as long as the employee provides sufficient information to show that she *likely* has an FMLA-qualifying condition. *See Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006). The first possible time that Cardona flagged that she may have needed FMLA leave was through a text message she sent to Navarre on May 3, 2019. She then emailed Peck about her lupus diagnosis on August 9, 2019. On August 12, 2019, Navarre approved Cardona to take time off to attend doctor appointments related to her lupus. On October 6, 2019, Cardon texted Navarre about possibly taking FMLA leave. They subsequently had an in-person meeting discussing possible FMLA leave. In sum, there is no dispute that Cardona mentioned her lupus condition to Polaris multiple times. Thus, the fourth element is met.

The fifth element—denial of FMLA benefits—requires an elaboration. Interference with an employee's FMLA benefit is not limited to denying the benefits; interfering or restraining an employee's rights to FMLA benefits can be sufficient. *Ziccarelli v. Dart*, 35 F.4th 1079, 1085 (7th Cir.), *cert. denied*, 143 S. Ct. 309 (2022). Examples of interference include using the taking of FMLA leave as a negative factor in employment actions and discouraging an employee from using FMLA leave. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015). *Preddie v. Bartholomew Consolidated School Corp.* is particularly instructive on this issue. In *Preddie*, the plaintiff was a teacher who was diagnosed with diabetes, and his son was diagnosed with sickle cell anemia, both of which are FMLA-qualifying conditions. *Preddie*, 799 F.3d at 810–11. During the 2010-2011 school year, the plaintiff recorded twenty-three absences, many of them related to either caring for his son or treating his diabetes. *See id.* at 811. While the defendant-employer mentioned to the plaintiff that he could apply for FMLA leave, the plaintiff never requested time off under FMLA. *Id.* When the defendant terminated the plaintiff's employment at the school, defendant cited, among other reasons, his absences. *Id.* at 818. There, the Seventh Circuit reversed the district court's summary judgment in favor of the defendant because a reasonable jury could conclude that his FMLA-related absences was a negative factor that resulted in his termination. *See id.* at 818–19.

Cardona has provided sufficient evidence from which a jury could conclude that Polaris "interfered" with her rights by using the taking of FMLA leave as a negative factor in employment actions. Like the plaintiff in *Preddie*, Cardona never formally requested for FMLA leave but still took absences to treat her lupus condition. Cardona was also specifically told that her absences were a reason for terminating her employment. In her deposition, Cardona stated that in the termination meeting, Navarre mentioned how she did not fully participate, presumably with school

11

events, and how Cardona had absences and missed staff meetings. These stated reasons are all logically and practically tied to absences related to Cardona's lupus—an FMLA-qualifying condition. As such, a reasonable jury could find that her absences served as a negative factor when deciding whether to terminate Cardona. Thus, the Court finds that there is a genuine issue of material fact.

Polaris's caselaw citations are distinguishable. Polaris cites to *Nicholson v. Pulte Homes Corp.* and *Birks v. YRC, Inc.* for the support that Polaris could not have interfered with Cardona's FMLA benefits because they provided Cardona with intermittent leave, but neither case comments on whether the FMLA-qualified leave served as a negative factor in an employment action. In *Nicholson*, the defendant only cited to plaintiff's inability to meet performance improvements as the reason for the termination and there was nothing in the record to contradict this reason. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827–28 (7th Cir. 2012). Similarly, the district court in *Birks* does not discuss whether requesting or using FMLA leave was a negative factor in an employment action when reviewing the FMLA interference claim. *Birks v. YRC, Inc.*, No. 13 C 9296, 2015 WL 394097, at *2 (N.D. Ill. Jan. 29, 2015). At best, these cases propose that *in the absence* of sufficient evidence to show a negative factor in an employment action, providing leave for an employee does not interfere with their FMLA rights. In contrast, Cardona has presented sufficient evidence to show her FMLA-qualified condition served as a negative factor in her termination because Navarre specifically mentioned Cardona's absences. Cardona's statement creates a contradiction in the record and therefore, summary judgment on Count IV is denied.

**IV.     Count III and V – FMLA and ADA Retaliation**

Finally, Cardona alleges that Polaris retaliated against her by terminating her employment because of her disability and its related absences. She brings retaliation claims under both the

FMLA and the ADA. The analytical framework for both statutes overlap.[4] *Freelain v. Village of Oak Park*, 888 F.3d 895, 900 (7th Cir. 2018); *see also Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004) ("We evaluate a claim of FMLA retaliation the same way that we would evaluate a claim of retaliation under other employment statutes, such as the ADA or Title VII.").

To prove retaliation under both the FMLA and ADA, the plaintiff must show that: (1) she engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action. *Freelain*, 888 F.3d at 900. Polaris does not dispute the first two elements, so the Court will focus on causation.

As discussed above, Cardona has raised a genuine issue of material fact that Polaris terminated her because of her disability and the absences for her medical treatments. *Preddie* is illustrative here again. There, the Seventh Circuit reversed the district court's summary judgment in favor of the defendant on the FMLA retaliation claim because the plaintiff offered evidence that "he was terminated, at least in part, based on his record of absences, and that the [defendant] knew that many of those absences were attributable to his diabetes and to his son's sickle cell anemia." *Preddie*, 799 F.3d at 819. The facts in *Preddie* are parallel to the ones in this case. Like the *Preddie* plaintiff, Cardona was terminated, at least in part, because of her absences, and that Polaris knew that those absences were attributable to Cardona's lupus. As in *Preddie*, summary judgment on Cardona's retaliation claims is inappropriate.

## CONCLUSION

---

[4] The Court notes that it is ambiguous as to whether the FMLA and ADA can be analyzed under the same framework. The Seventh Circuit has ruled that an FMLA retaliation claim requires only that "the protected conduct was a substantial or motivating factor in the employer's decision," *Goelzer*, 604 F.3d at 995, while an ADA retaliation claim requires a but-for causation, *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018). Still, the Seventh Circuit has analyzed both FMLA and ADA claims under a but-for cause standard. *See Freelain*, 888 F.3d at 900. The Court declines to opine on which standard is appropriate because even under the more stringent but-for cause standard, the Court found a genuine dispute of material fact.

For the foregoing reasons, the Court grants in part and denies in part Polaris's motion for summary judgment [19]. The Court grants summary judgment on Count II and denies summary judgment on Counts I, III, IV, and V.

>_____
>Virginia M. Kendall
>United States District Judge

Date: September 26, 2023